**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ASSOCIATION OF NEW JERSEY RIFLE & PISTOL CLUBS, INC.; KNIFE RIGHTS, INC.; WENDY COPENHAVER; WAYNE VIDEN; WALTER EVERARD, JR.; and SALVATORE MARSILLA, *Plaintiffs*, v. JENNIFER DAVENPORT, in her official capacity as Attorney General of New Jersey, JEANNE HENGEMUHLE, in her official capacity as Acting Superintendent of the New Jersey Division of State Police, *Defendants*. | Civil Action No. 26-cv-12401 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Daniel L. Schmutter
HARTMAN & WINNICKI, P.C.
74 Passaic Street
Ridgewood, New Jersey 07450
(201) 967-8040
(201) 967-0590 (fax)
dschmutter@hartmanwinnicki.com
*Attorneys for Plaintiffs*

## LOCAL CIVIL RULE 10.1 STATEMENT

The mailing addresses of the parties to this action are:

Wendy Copenhaver
927 South Second Road
Hammonton, NJ 08037

Wayne Viden
306 North Delsea Dr.
Glassboro, NJ 08028

Walter Everard, Jr.
109 Rollins Trail
Hopatcong NJ 07843

Salvatore Marsilla
66 Park Ave
Emerson, NJ 07630

Association of New Jersey Rifle & Pistol Clubs, Inc.
5 Sicomac Road, Suite 292
North Haledon, New Jersey 07508

Knife Rights, Inc.
313 W. Temple Ct.
Gilbert, AZ 85233

Jennifer Davenport
Office of the Attorney General
RJ Hughes Justice Complex
25 Market Street, Box 080
Trenton, New Jersey 08625

Jeanne Hengemuhle
Office of the Superintendent
New Jersey State Police
P.O. Box 7068
West Trenton, New Jersey 08628

## INTRODUCTION

> **The Second Amendment's plain text . . . presumptively guarantees . . . a right to "bear" arms in public for self-defense.**

*New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111, 2135 (2022).

> **Courts should not be in the business of demanding that citizens use more force for self-defense than they are comfortable wielding.**

*Caetano v. Massachusetts*, 577 U.S. 411, 421 (2016) (Alito, J. concurring).

1. This lawsuit is not about guns. It is about arms, but not guns. The United States Supreme Court has made it clear that arms are "[w]eapons of offence, or armour of defence" "any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another." *District of Columbia v. Heller*, 554 U.S. 570, 681 (2008) (citations omitted). Arms come in many forms, not just guns. While the *Bruen* decision has forced New Jersey to allow the carry of guns for self-defense, New Jersey law still explicitly bans and punishes the carry of common, everyday objects other than firearms specifically for the purpose of self-defense. That flies in the face of *Bruen* and must change. This case aims to do just that.

2. The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. CONST. amend. II (emphasis added). In *Heller*, the United States Supreme Court made clear that the Constitution guarantees the right of the people to possess arms for lawful purposes, including for the purpose of exercising self-defense. Four years ago, the United States Supreme Court decided *Bruen*, 597 U.S. at 33, holding that the Second Amendment guarantees the right of the people to carry arms *in public* for lawful purposes such as self-defense.

3. New Jersey demands that its citizens be defenseless when they go about their day in public. *Defenseless*. Until forced to issue Permits to Carry a Handgun by the *Bruen* decision in 2022, New Jersey banned its citizens from carrying any weapon for self-defense. Still today, New Jerseyans cannot carry any ordinary object for protection against violent crime, not a baseball bat, not a stick, not a knife, not a pair of scissors, not anything. If a person keeps an ordinary baseball bat in her car or if she keeps a small baton (sometimes called a kuboton) on her keychain she can find herself arrested and thrown in prison under New Jersey law.

4. The Second Amendment protects *all* common arms not just guns. There are many situations in which a person may prefer to defend against violent attack with something other than a firearm. New Jersey does not allow that. This is how a single mom using a carpet cutter to defend herself and her young daughter against a violent and potentially fatal beating found herself a convicted felon. *See State v. Kelly*, 118 N.J. 370 (1990).

5. Since 2008, when the Supreme Court announced in *Heller* that the Second Amendment protects a robust individual right to keep and bear arms, the State of New Jersey has been in continuous panic mode. This is because New Jersey leads the nation in laws that infringe the fundamental right to keep and bear arms, and the State rightly worries that its ability to continue suppressing the fundamental constitutional rights of New Jerseyans is in jeopardy.

6. *Bruen* obliterated any claim that New Jersey could validly continue to prevent law-abiding New Jerseyans from providing for their own personal protection in their daily lives by denying ordinary people the right to carry a handgun in public. 597 U.S. at 33. New Jersey's "justifiable need" requirement, the tool New Jersey used liberally to prevent nearly all New Jerseyans from obtaining a Permit to Carry a Handgun ("PTC") is, thankfully, dead and buried. *See Mazahreh v. Platkin*, 1:20-cv-17598, ECF No. 51 (D.N.J. Oct. 12, 2022).

7. But a mere seven months after *Bruen* was decided, in a fit of pure rage and naked power, New Jersey enacted Chapter 131 – a comprehensive attempt to circumvent *Bruen.* Though New Jersey is compelled by the Constitution to *issue* a PTC to a law-abiding New Jerseyan, Chapter 131 is calculated to make it nearly impossible for that person to *use* her PTC, by among other things, imposing severe restrictions on where she may carry her handgun, attempting to make nearly everywhere in New Jersey off limits for exercising her fundamental right to bear arms.

8. Fortunately, that unconstitutional infringement is being challenged in a pair of consolidated lawsuits captioned *Koons v. Platkin*, 673 F. Supp. 3d 515 (D.N.J. 2023), *reh. en banc granted, sub nom, Koons v. Attorney General New Jersey*, 162 F.4th 100 (3d Cir. 2025). And it has now been established that, perhaps the most pernicious element of Chapter 131, the "Private Property Rule" or "Vampire Rule," which prohibits exercising the right to bear arms on all private property unless the property owner explicitly consents, is unconstitutional. *See Wolford v. Lopez*, 146 S. Ct. 2032 (2026) (holding Hawaii's version of the "Vampire Rule" unconstitutional).

9. Yet, so complete is New Jersey's hostility to personal self-defense by law-abiding individuals, that New Jersey prohibits the possession of *any* weapon or implement in public for self-defense. This lawsuit seeks to end that egregious infringement.

10. New Jersey defines "weapon" as follows:

> r. "Weapon" means anything readily capable of lethal use or of inflicting serious bodily injury. The term includes, but is not limited to . . . . (long list of examples omitted).

N.J.S. 2C:39-1(r).

11. In other words, *anything* can be a prohibited weapon under New Jersey law – a baseball bat, a hammer, a screwdriver, any knife, a box cutter, pepper spray, bear spray, a stick,

anything. And if you happen to have a baseball bat in your car but you are not on your way to a baseball game, you can be arrested, prosecuted, and imprisoned under New Jersey law.

12. N.J.S. 2C:39-5(d) prohibits the possession of any weapon,[1] that is, any object that could be used as a weapon, "under circumstances not manifestly appropriate for such lawful uses as it may have." And self-defense explicitly does not count as such a "lawful use." *State v. Kelly*, 118 N.J. 370 (1990) (single mother of young child convicted of *possession* of box cutter after successfully fending off violent ex-boyfriend who was in the process of beating her to death).

13. Prior to *Bruen*, N.J.S 2C:39-5(d) effectively cut off *all* means of self-defense in public, as a person could not carry a firearm, nor any other object for personal self-defense.[2]

14. Now, in the post-*Bruen* world, a New Jerseyan can apply for a Permit to Carry a handgun. But the cruel irony is that, having been forced kicking and screaming into compliance with the Constitution as to handguns, New Jersey law now only allows using the *most* force possible in self-defense. Providing for any form of self-defense using *less* force than a handgun is a crime in New Jersey.

15. But in the post–*Bruen* world, such a sweeping prohibition cannot and must not stand. Just as a person has a fundamental right to carry a handgun in public for self-defense, so too does a person have a fundamental right to carry other arms in public for self-defense, including arms in "common use," that is, arms "typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 625; *Association of New Jersey Rifle & Pistol Clubs v. Attorney General New Jersey*, 183 F.4th 211, 234 (3d Cir. 2026).

---

[1] Other than firearms, which are separately regulated by statute.

[2] N.J.S. 2C:39-6(i)(1) contains an exemption which allows a person to possess one (and only one) pepper spray or similar spray device of no more than 0.75 ounce. The narrowness of the exemption speaks to its own absurdity.

16. That includes knives, sticks, tasers and stun guns, sprays of all sizes, and many other types of arms that New Jersey will put a person in prison merely for possessing in public.

17. This must end. In addition to being utterly unconscionable, precluding law-abiding individuals from possessing arms employing less force than firearms is wholly unconstitutional. Accordingly, Plaintiffs Wendy Copenhaver, Wayne Viden, Walter Everard, Salvatore Marsilla, Association of New Jersey Rifle & Pistol Clubs, Inc. and Knife Rights, Inc. (collectively "Plaintiffs"), by and through the undersigned attorneys, file this Complaint against the above-captioned Defendants, in their official capacities as the state officials responsible under New Jersey law for administering and enforcing the State's laws and regulations governing the possession of arms. Plaintiffs seek declaratory and injunctive relief: a declaration that New Jersey's prohibitions on the possession of non-firearm arms suppressing the fundamental right to bear arms in public as set forth in *Bruen* is unconstitutional and injunctive relief precluding its enforcement.

18. In support of their Complaint against Defendants, Plaintiffs hereby allege as follows:

**JURISDICTION AND VENUE**

19. This Court has subject-matter jurisdiction over Plaintiffs' claim under 28 U.S.C. §§ 1331 and 1343.

20. Plaintiffs seek remedies under 28 U.S.C. §§ 1651, 2201, and 2202 and 42 U.S.C. §§ 1983 and 1988.

21. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) & (b)(2).

**PARTIES**

22. Plaintiff Wendy Copenhaver is a law-abiding resident and citizen of the United States and the State of New Jersey. She resides at 927 South Second Road, Hammonton, New

Jersey 08037. She is a member of Association of New Jersey Rifle & Pistol Clubs, Inc. and Knife Rights, Inc.

23. Plaintiff Wayne Viden is a law-abiding resident and citizen of the United States and the State of New Jersey. He resides at 306 North Delsea Dr., Glassboro, New Jersey 08028. . He is a member of Association of New Jersey Rifle & Pistol Clubs, Inc. and Knife Rights, Inc.

24. Plaintiff Walter Everard, Jr. is a law-abiding resident and citizen of the United States and the State of New Jersey. He resides at 109 Rollins Trail, Hopatcong, New Jersey 07843. He is a member of Association of New Jersey Rifle & Pistol Clubs, Inc. and Knife Rights, Inc.

25. Plaintiff Salvatore Marsilla is a law-abiding resident and citizen of the United States and the State of New Jersey. He resides at 66 Park Ave, Emerson, New Jersey 07630. He is a member of Association of New Jersey Rifle & Pistol Clubs, Inc. and Knife Rights, Inc.

26. Plaintiff Association of New Jersey Rifle & Pistol Clubs, Inc. ("ANJRPC") is a not-for-profit membership corporation, incorporated in the State of New Jersey in 1936, which represents its members. Its address is 5 Sicomac Road, Suite 292, North Haledon, New Jersey 07508. ANJRPC represents the interests of target shooters, hunters, competitors, outdoors people, and other law-abiding firearms owners. Among ANJRPC's purposes is aiding such persons in every way within its power and supporting and defending the people's right to keep and bear arms, including the right of its members and the public to carry arms in public for self-defense. New Jersey's law prohibiting the possession and carry of non-firearm arms is thus a direct affront to ANJRPC's central mission. ANJRPC has tens of thousands of members who reside in New Jersey. ANJRPC brings the claims herein on behalf of its members.

27. Plaintiff Knife Rights, Inc. ("Knife Rights") is a non-profit member organization incorporated under the laws of the State of Arizona. Knife Rights, Inc., through direct and

grassroots advocacy, promotes legislative and legal action in support of people's ability to keep and carry knives and edged tools for all lawful purposes including self-defense. Its address is 313 W. Temple Ct., Gilbert, Arizona 85233. Knife Rights brings the claims herein on behalf of its members.

28. Defendant Jennifer Davenport is the Attorney General of New Jersey. As Attorney General, she exercises, delegates, or supervises all the powers and duties of the New Jersey Department of Law and Public Safety, including the Division of State Police within that Department, which is responsible for executing and enforcing New Jersey's laws and regulations governing the possession and carry of arms. Defendant Davenport also supervises and directs the activities of local law enforcement, including setting standards, procedures, and guidelines for the processing and issuance of firearms permits. Finally, as chief law enforcement official in the State, Defendant Davenport exercises supervisor authority over all State prosecutors' offices. Her official address is Office of the Attorney General, RJ Hughes Justice Complex, 25 Market Street, Box 080, Trenton, New Jersey 08625. She is being sued in her official capacity.

29. Defendant Jeanne Hengemuhle is the Acting Superintendent of the New Jersey Division of State Police. As Superintendent, subject to the oversight and supervision of the Attorney General, she exercises, delegates, or supervises all the powers and duties of the New Jersey Division of State Police, including executing and enforcing New Jersey's laws and regulations governing the possession and carry of arms. Her official address is Office of the Superintendent, New Jersey State Police, P.O. Box 7068, West Trenton, New Jersey 08628. She is being sued in her official capacity.

## FACTUAL ALLEGATIONS

### New Jersey's Comprehensive Infringement on the Fundamental Right to Carry Arms in Public

#### A. General Prohibition on Non-Firearm Weapons

30. N.J.S. 2C:39-1(r) defines "weapon" as follows:

> r. "Weapon" means anything readily capable of lethal use or of inflicting serious bodily injury. The term includes, but is not limited to, all (1) firearms, even though not loaded or lacking a clip or other component to render them immediately operable; (2) components which can be readily assembled into a weapon; (3) gravity knives, switchblade knives, daggers, dirks, stilettos, or other dangerous knives, billies, blackjacks, bludgeons, metal knuckles, sandclubs, slingshots, cesti, or similar leather bands studded with metal filings or razor blades imbedded in wood; and (4) stun guns; and (5) any weapon or other device which projects, releases, or emits tear gas or any other substance intended to produce temporary physical discomfort or permanent injury through being vaporized or otherwise dispensed in the air.

31. Under New Jersey criminal law the definition of weapon is incredibly broad, and in addition to many enumerated items, easily includes large numbers of ordinary objects such as a baseball bat, a stick, a cane, a knife, a hammer, a wrench, a screwdriver, a wood file, etc.

32. N.J.S. 2C:39-5(d) provides as follows:

> d. Other weapons. Any person who knowingly has in his possession any other weapon under circumstances not manifestly appropriate for such lawful uses as it may have is guilty of a crime of the fourth degree.

33. The prohibitions contained in 2C:39-5(d) are triggered by many ordinary everyday objects. In context, 2C:39-5(d)'s reference to "other weapon" refers to non-firearms, as 2C:39-5(a) through (c) all refer to various types of firearms.

34. In *State v. Kelly*, 118 N.J. 370 (1990), the New Jersey Supreme Court interpreted 2C:39-5(d) to *exclude* self-defense as a "lawful purpose." The case involved, Kelly, a single mother of a young child who was taking the child to the park to play. Because she was worried that, on the way to the park, they might encounter her violent ex-boyfriend who had beaten her

severely on multiple occasions (including once sending her to the hospital), the single mom brought with her a carpet cutter for protection. *Id*. at 373-74.

35. Kelly was correct in her prediction. On their way back from the park, they did encounter the violent ex-boyfriend, and he started punching Kelly repeatedly, including punching her in the head, dazing her, when she tried to run away. Kelly then produced the carpet cutter and cut him several times. He ceased his attack. *Id*. at 374-75.

36. The New Jersey Supreme Court unconscionably held that while Kelly could lawfully exercise self-defense by *spontaneously encountering* a weapon at the exact moment she needed it, she could not prepare for self-defense in advance by bringing a weapon with her on her travels, even though she correctly predicted that she would need it to defend her life:

> When Kelly armed herself, the danger was in no way immediate. Had Kelly seized the weapon spontaneously and used it to defend herself against a life-threatening attack, then, she would not have possessed the weapon for a manifestly inappropriate purpose. As it stands, however, even Kelly acknowledged at trial that she knew she was not supposed to carry a razor but took it with her in anticipation of a confrontation with Boone. Thus, the record fully supports the jury's finding that Kelly possessed the weapon under manifestly inappropriate circumstances. Her anticipatory self-defense does not excuse the possession.

*Id*. at 385-86. In what can only be described as the New Jersey Supreme Court's *Dred Scott* moment, the Court concluded that the legally correct choice for Kelly was to die at the hands of her attacker.

37. There are only two exceptions to this profoundly immoral and unconstitutional rule. One, of course, is the Permit to Carry a Handgun which, as a result of *Bruen*, New Jersey was forced to start issuing to law-abiding applicants without regard to "justifiable need."

38. The second is an exemption found in N.J.S. 2C39:6(i)(1). A person may possess:

> [O]ne pocket-sized device which contains and releases not more than three-quarters of an ounce of chemical substance not ordinarily capable of lethal use or of inflicting

serious bodily injury, but rather, is intended to produce temporary physical discomfort or disability through being vaporized or otherwise dispensed in the air.

39. In other words, one tiny canister of pepper spray or the like. One. Not two. One.

40. Accordingly, prior to *Bruen*, the law in New Jersey was that a person could only defend herself against a violent attack in public with a single small canister of pepper spray.

41. Now, after *Bruen*, the law in New Jersey is that a person may only defend herself (1) with a single small can of pepper spray or (2) by applying deadly force with a handgun.

42. No intermediate form of self-defense is permitted under New Jersey law.

43. Further, contrary to *Heller*, which makes clear that the Second Amendment guarantees that the *people* get to choose what arms they wish to keep and bear, New Jersey instead chooses what arms a person may lawfully keep and bear.

44. In 2017, nine years after *Heller,* but five years before *Bruen*, the New Jersey Supreme Court decided *State v. Montalvo*, 229 N.J. 300 (2017).

45. *Montalvo* involved a dispute between two neighbors in an apartment building. The downstairs neighbor came upstairs to confront Montalvo, and fearing for his safety and the safety of his pregnant wife, Montalvo answered the door with a machete held down at his side. *Id*. at 308-09.

46. At trial Montalvo was convicted of "possession of a weapon under circumstances not manifestly appropriate for such lawful uses as it may have" under 2C:39-5(d) and *State v. Kelly*. The New Jersey Supreme Court reversed, concluding that after *Heller*, the holding of *Kelly* could not be applied inside the home. The Court reasoned that after *Heller,* self-defense in the home must be considered a "lawful purpose" within the meaning of 2C:39-5(d). 229 N.J. at 318-26.

47. The New Jersey Supreme Court saw that *Kelly* could not survive *Heller* inside the home. After *Bruen*, the principle from *Kelly* that self-defense cannot be a lawful purpose under 2C:39-5(d) cannot survive outside the home either.

48. In *Montalvo*, the New Jersey Supreme Court concluded that N.J.S. 2C:39-5(d) cannot constitutionally be applied to a person in possession of a weapon in the home for self-defense.

49. After *Bruen*, it is clear that N.J.S. 2C:39-5(d) is unconstitutional in its entirety on its face.

**B. Per Se Ban on Specific Arms in Common Use.**

50. In addition to generally prohibiting the possession of non-firearm arms for self-defense, New Jersey also bans possession of specific non-firearm arms deemed per se unlawful.

51. N.J.S. 2C:39-3(e) provides as follows:

> e. Certain weapons. Any person who knowingly has in his possession any gravity knife, switchblade knife, dagger, dirk, stiletto, billy, blackjack, metal knuckle, sandclub, slingshot, cestus or similar leather band studded with metal filings or razor blades imbedded in wood, ballistic knife, without any explainable lawful purpose, is guilty of a crime of the fourth degree.

52. "Explainable lawful purpose" does not include self-defense. *See Kelly*; *State v. Dunlap*, 181 N.J. Super. 71, 75-77 (Law Div. 1981) ("Explainable lawful purpose" means: not used as a weapon).

53. Similarly, N.J.S. 2C:39-9(d) provides as follows:

> d. Weapons. Any person who manufactures, causes to be manufactured, transports, ships, sells, or disposes of any weapon, including gravity knives, switchblade knives, ballistic knives, daggers, dirks, stilettos, billies, blackjacks, metal knuckles, sandclubs, slingshots, cesti, or similar leather bands studded with metal filings, or, except as otherwise provided in subsection i. of this section, in the case of firearms, if he is not licensed or registered to do so as provided in chapter 58 of Title 2C of the New Jersey Statutes, is guilty of a crime of the fourth degree. Any person who manufactures, causes to be manufactured, transports, ships, sells, or disposes of any weapon or other device which projects, releases, or emits

tear gas or other substances intended to produce temporary physical discomfort or permanent injury through being vaporized or otherwise dispensed in the air, which is intended to be used for any purpose other than for authorized military or law enforcement purposes by duly authorized military or law enforcement personnel or the device is for the purpose of personal self-defense, is pocket-sized and contains not more than three-quarters of an ounce of chemical substance not ordinarily capable of lethal use or of inflicting serious bodily injury, or other than to be used by any person permitted to possess such weapon or device under the provisions of subsection d. of N.J.S.2C:39-5, which is intended for use by financial and other business institutions as part of an integrated security system, placed at fixed locations, for the protection of money and property, by the duly authorized personnel of those institutions, is guilty of a crime of the fourth degree.

54. Taken together, the preceding two statutes effectively ban the possession of arms in common use and protected by the Second Amendment.

**1. Knives**

**a) Switchblade Knife**

55. "Switchblade knife" is defined under N.J.S. 2C:39-1(p) as follows:

**any knife or similar device which has a blade which opens automatically by hand pressure applied to a button, spring, or other device in the handle of the knife.**

56. Additionally, the American Knife & Tool Institute ("AKTI") defines switchblade knife using the term "automatic knife" as:

**A knife with a blade exposed in an automatic way and moved from the closed position to the open position exclusively by potential energy upon release of a restraining mechanism.**

https://www.akti.org/resources/akti-approved-knife-definitions/#automatic-knife (last accessed 9/18/26.) A switchblade knife is typically held closed with a catch, opening by the press of a button, releasing the blade which is propelled open by a spring. *Id.*

**b) Gravity Knife**

57. "Gravity knife" is defined under N.J.S. 2C:39-1(h) as follows:

> **any knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force.**

58. Further, AKTI defines gravity knife as:

> **A knife where the blade may be extended and retracted exclusively by gravitational force.**

https://www.akti.org/resources/akti-approved-knife-definitions/#gravity-knife (last accessed 9/18/26). A gravity knife opens or closes by holding the handle of the knife in a downward or upward position, respectively, and releasing a lock, thereby allowing the blade to fall down through the front of the handle and lock in the open or closed position using the force of gravity. *Id*.

**c) Dirk, Dagger, Stiletto**

59. Neither "dirk," "dagger," nor "stiletto" are defined under New Jersey law. However, AKTI defines dagger as follows:

> **A knife having a generally straight fixed blade with dual effective cutting edges.**

https://www.akti.org/resources/akti-approved-knife-definitions/#dagger (last accessed 9/18/26).

60. The American Heritage Dictionary defines stiletto as:

> **1. a. A small dagger with a slender, tapering blade.**

https://ahdictionary.com/word/search.html?q=stiletto (last accessed 9/18/26).

61. The stiletto is particularly significant in Italian culture and history. https://pensivewarrior.com/2025/05/21/iconic-weapons-stiletto/ (last accessed 9/18/26)

62. The American Heritage Dictionary defines dirk as:

**A dagger.**

https://ahdictionary.com/word/search.html?q=dirk last accessed 9/18/26).

63. The dirk is particularly significant in Scottish culture and history.

https://tartanvibesclothing.com/blogs/culture/the-scottish-dirk (last accessed 9/18/26).

64. In view of the foregoing, the terms dirk, dagger, and stiletto are typically used to describe similar double-edged knives particularly suitable for applying thrusting techniques in fighting.

65. Historically, and across multiple nations and cultures, daggers in various forms have been the preferred arms carried by women for personal self-defense, often because they are more easily concealed, quick to deploy, and do not require substantial physical strength. https://everestforge.com/everest-forge-blog/is-the-dagger-a-womans-weapon-history (last accessed 9/8/26).

**2. Impact Weapons**

**a) Billy**

66. "Billy" is not defined under New Jersey law. However, the American Heritage Dictionary defines billy as "**a billy club**," which in turn is defined as follows:

**A short stick or club, especially a police officer's club.**

https://ahdictionary.com/word/search.html?q=billy (last accessed 9/18/26).

https://ahdictionary.com/word/search.html?q=billy+club (last accessed 9/18/26).

**b) Blackjack**

67. "Blackjack" is not defined under New Jersey law. However, the American Heritage Dictionary defines blackjack as follows:

> **1. A leather-covered bludgeon used as a hand weapon, having a short, flexible shaft or strap from which it is swung.**

https://ahdictionary.com/word/search.html?q=blackjack (last accessed 9/18/26).

**c) Metal Knuckle**

68. "Metal knuckle" is not defined under New Jersey law. However, metal knuckles have been described as follows:

> Brass knuckles, sometimes called metal knuckles or knuckledusters, are solid pieces of metal designed to fit around the fingers. When held in a closed fist, they reinforce the hand, allowing the user to deliver a harder impact while protecting the knuckles from injury. Most are made from brass, aluminum, or stainless steel, although modern versions can also be found in polymer or composite materials.

https://www.karatemart.com/blog/brass-knuckles-explained-history-design-and-modern-laws (last accessed 9/18/26).

**3) Other Prohibited Arms**

**a) Slingshot**

69. "Slingshot" is not defined under New Jersey law. However, the American Heritage Dictionary defines slingshot as follows:

> **A Y-shaped stick or frame having an elastic strap attached to the prongs, used for flinging small projectiles.**

70. The Boy Scouts of America sponsors a slingshot curriculum for the Cub Scouts (grades K-5). https://www.scouting.org/wp-content/uploads/2024/05/2024_Cub-Scout_Slingshot-Adventure-Lesson-Plan_051624.pdf (last accessed 9/18/26).

71. Competitive slingshot events take place throughout the United States and internationally. https://simple-shot.com/pages/slingshot-events-and-competitions-calendar (last accessed 9/18/26).

72. Upon information and belief, the ban on slingshots contained on 2C:39-3 and 2C:39-9 was included by mistake based on confusion with the "slungshot," an entirely unrelated weapon banned in some other states. *See* Star Ledger, August 18, 1991 at 79 (attached hereto as Exhibit A).

**b) Stun Gun/Taser**

73. "Stun gun" is defined under N.J.S. 2C:39-1(t) as follows:

**any weapon or other device which emits an electrical charge or current intended to temporarily or permanently disable a person.**

74. Collins Dictionary defines "Taser" as follows:

**1. *trademark* a brand of weapon that fires electrical probes that give an electric shock, causing temporary paralysis**

75. Although the specific prohibition on possession of a stun gun found in N.J.S. 2C:39-3(h) was ruled unconstitutional in *New Jersey Second Amendment Society v. Porrino*, No. 3:16-cv-04906, Dkt No. 30 (Apr. 25, 2017), that ruling did not alter a person's potential criminal liability under N.J.S. 2C:39-5(d) for possession of a stun gun outside the home.

**c) Chemical Defense Spray**

76. In addition to providing an exemption for one chemical spray device of no more than 0.75 ounces, N.J.S. 2C:39-6(i)(1) simultaneously makes it an independent offense to possess any chemical spray in violation of that exemption.

**C. The Per Se Prohibited Arms are in Common Use**

77. Knives are arms that are typically possessed by law-abiding citizens for lawful purposes and are therefore in common use.

78. Knives are possessed by millions of law-abiding Americans and are widely available for lawful sale and possession throughout the United States.

79. Because switchblade knives, gravity knives, dirks, daggers, and stilettos are merely knives and are not materially different than other knives from a constitutional perspective, they are arms in common use.

80. Additionally, switchblade knives, gravity knives, dirks, daggers, and stilettos specifically are typically possessed by law-abiding citizens for lawful purposes and are therefore arms in common use. Further, they are possessed by millions of law-abiding Americans and are widely available for lawful sale and possession in most states.

81. Impact weapons are arms that are typically possessed by law-abiding citizens for lawful purposes and are therefore arms in common use.

82. Impact weapons are possessed by millions of law-abiding Americans and are widely available for lawful sale and possession throughout the United States.

83. Because billies, blackjacks, and metal knuckles are merely impact weapons and are not materially different than other impact weapons such as bats, canes, and sticks from a constitutional perspective, they are arms in common use.

84. Additionally, billies, blackjacks, and metal knuckles specifically are typically possessed by law-abiding citizens for lawful purposes and are therefore in common use. Further, they are possessed by millions of law-abiding Americans and are widely available for lawful sale and possession in most states.

85. Slingshots are arms and are typically possessed by law-abiding citizens for lawful purposes and are therefore arms in common use.

86. Slingshots are possessed by millions of law-abiding Americans and are widely available for lawful sale and possession in nearly all states.

87. Stun guns and Tasers are arms and typically possessed by law-abiding citizens for lawful purposes and are therefore arms in common use.

88. Stun guns and Tasers are possessed by millions of law-abiding Americans and are widely available for lawful sale and possession in most states.

89. Chemical defense sprays in excess of 0.75 ounces are arms and typically possessed by law-abiding citizens for lawful purposes and are therefore arms in common use.

90. Chemical defense sprays in excess of 0.75 ounces are possessed by millions of law-abiding Americans and are widely available for lawful sale and possession in most states.

91. Because all of the foregoing arms are in common use, their possession is protected by the Second Amendment.

92. In addition to being arms in common use, none of the foregoing arms is dangerous and unusual. Accordingly, their possession is protected by the Second Amendment.

### D. New Jersey's Laws Prohibiting Possession of Non-Firearm Weapons Infringes on Plaintiffs' Right to Keep and Bear Arms.

#### 1) Wendy Copenhaver

93. Plaintiff Wendy Copenhaver is a law-abiding resident of New Jersey. She is 63 years old and is married with two adult children and her first grandchild on the way. Copenhaver is a deacon with her church and has taught Sunday School at her church for the past 30 years.

94. Copenhaver is part owner of Bob's Little Sports Shop ("Bob's") in Glassboro, New Jersey.

95. Among other things, Bob's holds a Federal Firearms License ("FFL") and is a New Jersey Licensed Dealer in firearms.

96. Copenhaver is also the holder of a New Jersey Firearms Purchaser Identification Card ("FPIC") and regularly applies for and obtains Permits to Purchase a Handgun ("PTP") pursuant to N.J.S. 2C: 58-3. She owns multiple firearms.

97. Accordingly, Copenhaver regularly undergoes extensive background checks by both New Jersey and federal regulatory authorities in connection with the foregoing credentials.

98. As such, Copenhaver would qualify for a New Jersey Permit to Carry a Handgun ("PTC"). However, she chooses not to apply for a PTC. While Copenhaver believes she would choose to use deadly force where lawful and prudent to do so in her home, particularly to protect her family in her home, at this time Copenhaver is not certain that she would be willing to use lawful deadly force with a firearm in public.

99. Instead, when in public outside her home, Copenhaver chooses to carry one pepper spray device that does not exceed 0.75 in accordance with New Jersey law.

100. However, Copenhaver does not believe a single 0.75-ounce pepper spray is sufficient for her protection. Copenhaver believes that a single pepper spray unit can malfunction when she might need it for self-defense, and she has no back up unit. She also believes that a single spray unit might be insufficient in the event she is attacked by more than one assailant or if a single assailant needs to be sprayed more times than the capacity of the single unit would allow. If it were lawful to do so, Copenhaver would carry more than one such device, but she refrains from doing so as she fears arrest and prosecution under both N.J.S. 2C:39-5(d) and 2C:39-6(i)(1).

101. For the same reasons, if it were lawful to do so, Copenhaver would carry one or more pepper spray units with a capacity of more than 0.75 ounces, but she refrains from doing so as she fears arrest and prosecution under both N.J.S. 2C:39-5(d) and 2C:39-6(i)(1).

**2) Wayne Viden**

102. Plaintiff Wayne Viden is a law-abiding resident of New Jersey. He is 58 years old and is married with three adult children.

103. Viden is Copenhaver's brother and is also part owner of Bob's.

104. Viden is the holder of an FPIC and a PTC.

105. Accordingly, Viden has undergone multiple extensive background checks and continues to regularly undergo such background checks when his PTC and Bob's FFL and Dealer licenses are renewed.

106. Although Viden holds a PTC, he believes that he should also be prepared to use less force than that of a handgun when appropriate to do so in self-defense. To that end, Viden would carry a collapsible baton either on his person or in his vehicle for the option of using less force for self-defense if it were lawful to do so.

107. However, Viden refrains from carrying a collapsible baton for fear of arrest and prosecution under N.J.S. 2C:39-5(d) or under 2C:39-3(e) and/or 2C:39-9(d) as a billy.

**3) Walter Everard, Jr.**

108. Plaintiff Walter Everard, Jr. is a law-abiding resident of New Jersey. He is 77 years old and is a retired union pipefitter. Everard is married with four adult children, six grandchildren, and two great-grandchildren. Everard served in the United States Navy during the Vietnam War and was honorably discharged.

109. Everard is the holder of an FPIC and a PTC.

110. Accordingly, Everard has undergone multiple extensive background checks and continues to regularly undergo such background checks when his PTC is renewed.

111. Although Everard holds a PTC, he believes that he should also be prepared to use less force than that of a handgun when appropriate to do so in self-defense. To that end, Everard would sometimes choose to carry a double-edged fixed blade knife and would sometimes choose to carry a switchblade knife for self-defense if it were lawful to do so. Both options are quick to deploy, and a switchblade knife is compact and fits in a pocket.

112. However, Everard refrains from carrying a double-edged fixed blade knife as he fears arrest and prosecution under not only N.J.S. 2C:39-5(d) but also N.J.S. 2C:39-3(e) and 2C:39-9(d) as a dirk, dagger, and/or stiletto.

113. Further, he refrains from carrying a switchblade knife as he fears arrest and prosecution under N.J.S. 2C:39-5(d) and/or under 2C:39-3(e) and 2C:39-9(d).

114. Further, as a hunter, Everard would also carry bear spray when in the woods for protection against bears, but he refrains from doing so as he fears arrest and prosecution under both N.J.S. 2C:39-5(d) and 2C:39-6(i)(1), as bear spray is not pocket-sized and exceeds 0.75 ounces.

**4) Salvatore Marsilla**

115. Plaintiff Salvatore Marsilla is a law-abiding resident of New Jersey. He is 65 years old and is married with three stepchildren and six grandchildren. Marsilla owned an automotive retail store for 39 years.

116. Marsilla is the holder of an FPIC and a PTC.

117. Accordingly, Marsilla has undergone multiple extensive background checks and continues to regularly undergo such background checks when his PTC is renewed.

118. Although Marsilla holds a PTC, he believes that he should also be prepared to use less force than that of a handgun when appropriate to do so in self-defense. To that end, Marsilla would carry a collapsible baton as an option of using less force for self-defense if it were lawful to do so.

119. However, Marsilla refrains from carrying a collapsible baton for fear of arrest and prosecution under N.J.S. 2C:39-5(d) or under 2C:39-3(e) and/or 2C:39-9(d) as a billy.

120. Marsilla would also carry a blackjack if it were lawful to do so. A blackjack can be more compact and useful for self-defense under different circumstances than a baton.

121. However, Marsilla refrains from carrying a blackjack as he fears arrest and prosecution under N.J.S. 2C:39-5(d) or under 2C:39-3(e) and/or 2C:39-9(d).

122. Were it lawful to do so, Marsilla would also carry metal knuckles as a option for using less force for self-defense. Metal knuckles would help compensate for his advanced age in the event he needed to engage in lawful self-defense against a stronger and younger attacker but wanted to reduce the level of force being used in self-defense compared with some other weapons.

123. However, Marsilla refrains from doing so as he fears arrest and prosecution under N.J.S. 2C:39-5(d) or under 2C:39-3(e) and/or 2C:39-9(d).

124. Were it lawful to do so, Marsilla would also carry a gravity knife for using less force for self-defense. A gravity knife is compact and quick to deploy with one hand and uses a simpler mechanism than a switchblade knife.

125. However, Marsilla refrains from doing so as he fears arrest and prosecution under N.J.S. 2C:39-5(d) and/or N.J.S. 2C:39-3(e) and 2C:39-9(d).

126. Finally, Marsilla would possess a slingshot to practice marksmanship himself and to teach his grandchildren marksmanship, responsibility, and hand-eye coordination – all important

qualities in their own right, but also important should they choose to become owners of firearms or other arms when they are older.

127. Marsilla refrains from doing so as he fears arrest and prosecution under N.J.S. 2C:39-5(d) or under 2C:39-3(e) and/or 2C:39-9(d).

128. Marsilla would also use a slingshot to ward off pests from his property such as chipmunks and squirrels if New Jersey law were to allow it.

129. Members of ANJRPC, including but not limited to Plaintiffs herein, would possess and carry various non-firearm arms, including but not limited to fixed blade knives, gravity knives, switchblade knives, dirks, daggers, stilettos, billies, blackjacks, Tasers, stun guns, multiple canisters of pepper spray, canisters of pepper spray larger than 0.75 ounces, bear spray, and slingshots, but they refrain from doing so as they fear arrest and prosecution under N.J.S 2C:39-5(d), 2C:39-3(e), and/or 2C:39-9(d).

130. Were slingshots legal, ANJRPC would seek amendments to New Jersey law to allow small game and varmint hunting with a slingshot. By way of example, N.J.A.C. 7:25-5.23 currently provides for the use of airguns to take certain small game such as rabbits, hares, raccoons, woodchucks and the like with pellets between the calibers of .177 and .25. Slingshots would be well suited for those and similar game.

131. Members of Knife Rights, including but not limited to Plaintiffs herein, would possess and carry various non-firearm arms, including but not limited to fixed blade knives, gravity knives, switchblade knives, dirks, daggers, and stilettos, but they refrain from doing so as they fear arrest and prosecution under N.J.S 2C:39-5(d), 2C:39-3(e), and/or 2C:39-9(d).

**COUNT ONE**
**Deprivation of Plaintiffs' Rights Under U.S. CONST. amends. II and XIV**

132. Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

133. The Second Amendment to the U.S. Constitution provides: “A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.” The Second Amendment applies against the States via the Fourteenth Amendment. *See McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010).

134. The individual Plaintiffs and members of ANJRPC and Knife Rights who refrain from possessing and carrying the non-firearm arms as described herein are part of “the people” within the meaning of the Second Amendment.

135. The weapons Plaintiff seek to possess and carry as set forth above are implements of offense and defense and are therefore “arms.”

136. N.J.S. 2C:39-5(d), 2C:39-3(e), and 2C:39-9(d) restrict the keeping and bearing of the arms discussed above. Accordingly, those provisions implicate the plain text of Second Amendment.

137. Therefore, the State bears the burden to demonstrate that these restrictions are consistent with the nation’s historical tradition of firearms and arms regulation.

138. In the context of N.J.S. 2C:39-5(d), the State cannot show that the wholesale prohibition on preparing for armed self-defense in public is consistent with historical tradition of firearms and arms regulation.

139. In the context of N.J.S. 2C:39-3(e) and 2C:39-9(d), the State bears the burden to show that these enumerated, per se, arms are not in common use. The state cannot make such a showing.

140. Even if the State can show that these arms are not in common use, the State must further show that these arms are “dangerous and unusual.” The State cannot make that showing.

141. The arms described herein are in common use and are not dangerous and unusual.

142. Therefore, Plaintiffs have the right to acquire, possess, and carry such arms.

143. Accordingly, the foregoing provisions are invalid under the Second Amendment both facially and as applied to these Plaintiffs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for an order and judgment:

a. Declaring the foregoing provisions of law unconstitutional and thus devoid of any legal force or effect;

b. Temporarily, preliminarily, and permanently enjoining Defendants Davenport, Hengemuhle, and their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of the injunction, from enforcing the foregoing provisions of law;

c. Awarding Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action, pursuant to 42 U.S.C. § 1988; and

d. Granting such other and further relief as this Court deems just and proper.

Dated: September 21, 2026

Respectfully submitted,

s/ Daniel L. Schmutter
Daniel L. Schmutter
HARTMAN & WINNICKI, P.C.
74 Passaic Street
Ridgewood, New Jersey 07450
(201) 967-8040
(201) 967-0590 (fax)
dschmutter@hartmanwinnicki.com
*Attorneys for Plaintiffs*

**DECLARATION OF COUNSEL PURSUANT TO LOCAL CIV. R. 11.2**

The undersigned hereby states that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

I declare under penalty of perjury that the foregoing is true and correct.

s/ Daniel L. Schmutter
Daniel L. Schmutter
HARTMAN & WINNICKI, P.C.
74 Passaic Street
Ridgewood, New Jersey 07450
(201) 967-8040
(201) 967-0590 (fax)
dschmutter@hartmanwinnicki.com
*Attorney for Plaintiffs*

Dated: September 21, 2026